UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ALEXIS C. NORMAN,
(Reg. No. 49210-177),

   Plaintiff,

vs.                   No. 4:21-cv-0669-P

WARDEN CARR,
FMC Carswell, et al.,

   Defendants.

## MEMORANDUM OPINION and ORDER

   This case was filed by Bureau of Prisons ("BOP") inmate/plaintiff Alexis C. Norman ("Norman") asserting claims against government defendants and remaining individual government defendants FMC-Carswell Warden Michael Carr, and FMC-Carswell Medical Director Charles Langham. Am. Compl. 1, 3, ECF No. 12. By Opinion and Order of Partial Dismissal and Federal Rule of Civil Procedure 54(b) Judgment, the Court dismissed all claims, except for her claims against Warden Carr and Medical Director Langham under 28 U.S.C. §§ 1915A and 1915(e)(2)(B) and allowed service of Norman's claims upon defendants Carr and Langham. Order and Judgment, ECF Nos. 14, 15. Now pending is the motion for summary judgment of defendants Carr and Langham (ECF No. 31), along with a brief in support (ECF No. 32), and an appendix (ECF No. 33).[1] Although the Court granted Norman an extension of time to respond to the summary judgment motion, she has not filed any response to the summary judgment motion, even though she had ample time to do so. ECF No. 30. After considering the remaining relief sought by Norman, the record, briefing and applicable law, the Court concludes that Defendants' motion for summary judgment must be **GRANTED**, and all Norman's remaining claims must be **DISMISSED** for failure to exhaust administrative remedies under 42 U.S.C. §

---

[1]Defendants had submitted these documents with a motion for leave to file (ECF Nos. 26 and 27), which was granted and the motion, brief, and appendix were then separately filed. ECF Nos. 30, 31, 32 and 33. Because the ECF numbers in the appendix docketed at ECF No. 33 are not readable, the Court will cite to sections of the appendix at ECF No. 27.

1997e(a).

## BACKGROUND/PLAINTIFF'S PLEADING

Plaintiff Alexis Norman, Federal Register No. 49210-177, is presently designated to FMC-Carswell. *See* www.bop.gov inmate locator, last searched July 25, 2022. Norman was sentenced in the United States District Court for the Northern District of Texas to a total term of imprisonment of 360 months.[2]

Norman filed this lawsuit on May 20, 2021. ECF No. 1. In response to this Court's order, she filed an amended complaint on June 30, 2021. Am. Compl., ECF No. 12. Related to her remaining claims, therein Norman alleges that Warden Carr and Dr. Langham violated her Eighth Amendment rights by "authoriz[ing], plann[ing], and implement[ing]" unspecified COVID-19 policies, plans, and procedures related to social distancing, isolation, and testing that failed to protect her from COVID-19. Am. Compl. 6–7, 29, ECF No. 12; *see also* Am. Compl. 6, ECF No. 12 (claiming the BOP is "mismanaging the COVID-19 pandemic"). More specifically, Norman complains that Defendants were deliberately indifferent to her medical needs and/or the risk of COVID-19 to her health by subjecting her to unconstitutional conditions of confinement, namely: (1) failing to enforce social distancing at FMC Carswell in the dorms, common areas, and meals; (2) permitting FMC Carswell's population to exceed the rated capacity in the "high rise" building (Units 1 and 2); (3) housing four inmates to a cell; (4) denying inmates grab-n-go meals; and (5) failing to implement mandatory testing for staff and inmates. *Id*. at 8, 17, 22, 25–26. Norman also alleges unconstitutional conditions of confinement after she tested positive for COVID-19 on July 28, 2020. In this regard, Norman alleges she was placed in an isolation cell with other COVID-19 positive inmates and without a nurse's call button, cleaning supplies, a change of clothes, or hygiene products. *Id.* at 10, 24.

---

[2]In April 2016, Norman pleaded guilty to health care fraud and aiding and abetting and was sentenced to 105 months of imprisonment. *See* J. at 1, *United States v. Norman*, No. 3:15-cr-0066-B (N.D. Tex. Apr. 12, 2016), ECF No. 66. While on pretrial release, Norman was indicted and charged with additional fraud-related offenses. *See* Indictment, *United States v. Norman*, No. 3:17-cr-0315-B (N.D. Tex. Jun. 20, 2017), ECF No. 1. She subsequently pleaded guilty to: one count of conspiracy to commit health care fraud; three counts of health care fraud, aiding and abetting health care fraud, and committing an offense while on release; and one count of health care fraud and aiding and abetting health care fraud. *See* J. at 1, *United States v. Norman*, No. 3:17-cr-0315-B (N.D. Tex. May 16, 2019), ECF NO. 72. The Court sentenced Norman to 360 months of imprisonment to "run concurrently with [her] undischarged term of imprisonment" from her prior case. *Id*. at 2.

Additionally, Norman claims a denial of medical care in violation of her Eighth Amendment rights. Specifically, as to this claim, she claims that Dr. Langham knew COVID-19 can cause damage to the lungs, heart, and other organs but limited her medical treatment to only sick call since October 2020. *Id.* at 28. Norman contends she requested diagnostic testing, like an MRI or a stress test, but it has not been offered. *Id.*

## SUMMARY JUDGMENT EVIDENCE

As noted, Defendants filed an appendix in support of the motion for summary judgment that includes a total of forty-six pages of records. App. 1–46, ECF No. 27-1. In particular, the appendix includes the February 17, 2022 Declaration of Churee Costly with copies of the BOP Administrative Remedy Retrieval record for Norman and copies of multiple grievances appeals and responses. App. 1–8 (Costly Declaration); App. 9–33 (Attachment 1); App. 34–46 (Attachment 2), ECF No. 27-1. Norman has not provided any summary judgment evidence in response to the summary judgment motion.

## SUMMARY JUDGMENT STANDARD

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. FED. R. CIV. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact or (2) if the plaintiff has cited any materials in response, those materials do not establish the presence of a genuine dispute as to that fact. FED. R. CIV. P. 56(c)(1). Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* FED. R. CIV. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7

(5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (other citation omitted)). In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "After the non-movant [here, Norman] has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Nevertheless, a motion for summary judgment for failure to exhaust administrative remedies is treated slightly differently. *See, e.g.*, *Dillon v. Rogers*, 596 F.3d 260, 272–73 (5th Cir. 2010). "Exhaustion resembles personal jurisdiction and venue in that it is an affirmative defense that allows defendants to assert that plaintiffs have not invoked the proper forum for resolving a dispute." *Id.* at 272 (citing *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)). Stated differently, exhaustion of administrative remedies is a "rule of judicial administration" that is "akin to doctrines like 'abstention, finality, and ripeness . . . that govern the timing of federal court decision making.'" *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (other citation omitted)). Since exhaustion of administrative remedies is a "threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id.* (citation and footnote omitted).

## ANALYSIS

### A. Prison Litigation Reform Act ("PLRA") Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and

4

whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). This includes actions seeking monetary damages relief pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See Porter*, 534 U.S. at 524.

The Supreme Court has described the PLRA exhaustion provision as a "mandatory exhaustion" statute and has "reject[ed] every attempt to deviate . . . from its textual mandate." *Ross v. Blake*, 578 U.S. 632, 639–40 (2016); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citing *Porter*, 534 U.S. at 524). The only "textual exception to mandatory exhaustion" in the PLRA is the "availability" of administrative remedies. *Ross*, 578 U.S. at 642. To determine what remedies are "available" and thus must be exhausted, courts look to "the applicable procedural rules . . . defined . . . by the prison grievance process itself." *Jones*, 549 U.S. at 218. Administrative relief is "available" so long as the prison administrator has the "authority to take some action in response to a complaint," even if that relief does not provide the precise "remedial action an inmate demands to the exclusion of all other forms of redress." *Booth*, 532 U.S. at 736. As a result, "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 578 U.S. at 639.

The Fifth Circuit has taken a strict approach to the exhaustion requirement. *Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015) (quoting *Dillon*, 596 F.3d at 268) ("[P]risoners must not just substantially comply with the prison's grievance procedures, but instead must 'exhaust available remedies properly.'"). The Fifth Circuit has also recognized that "[w]hen a defendant asserts the defense of lack of exhaustion, the district court should rule on [the exhaustion] issue before allowing the case to proceed to the merits." *Nottingham v. Finsterwald*, 582 F. App'x 297, 297–98 (5th Cir. 2014) (citing *Dillon*, 596 F.3d at 265) (internal quotations omitted). And exhaustion must have occurred *before* the lawsuit was filed. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2021); *see also Covarrubias v. Foxworth*, No. 6:13-cv-0812, 2017 WL 1159767, at *3 (E.D. Tex. Mar. 29, 2017) (looking to whether administrative remedies had been exhausted "at the time of the filing of the original complaint" rather than when any amended complaint was filed). Also, when a prisoner can no longer comply with the exhaustion requirement because the deadline for

5

completing the administrative remedy has passed, the court may dismiss the suit with prejudice. *See Johnson v. La. Dep't of Pub. Safety & Corr.*, 468 F.3d 278, 280–81 (5th Cir. 2006) (per curiam). Courts are not "to inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness"; rather, "prisoner[s] must exhaust such administrative remedies as are available, whatever they maybe."*Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (per curiam) (internal quotation marks omitted) (citing *Booth*, 532 U.S. at 740 n.5; *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

     **B.**    **Review of Norman's BOP Records Concerning Administrative Exhaustion**

As an inmate at FMC-Carswell, Norman was required to exhaust the BOP's multi-step grievance process prior to filing her lawsuit. *See Hicks v. Garcia*, 372 F. App'x 557, 557 (5th Cir. 2010) (per curiam) (citing 28 U.S.C. § 1997e(a)) ("Under the Prison Litigation Reform Act, inmates must exhaust 'such administrative remedies as are available' prior to bringing a civil action."). As relevant to Norman's status as a federal inmate, codified BOP regulations define the grievance procedures. *See* 28 C.F.R. §§ 542.10 *et seq*. First, a prisoner must attempt to informally present the issue to staff. *Id.* § 542.13(a). If that fails, the prisoner may then submit a "Request for Administrative Remedy" to the prison's warden. *Id*. §§ 542.13(a), 542.14. If the prisoner is not satisfied with the warden's response, she may appeal to the BOP's regional director. *Id*. § 542.15(a). If the prisoner is unsatisfied with the regional director's response, she may appeal to the BOP's general counsel. *Id*. The regulations also provide that if a "request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare," the Warden must respond within three days after filing. *Id.*§ 542.18. As this Court has explained, "[a]dministrative remedies have not been exhausted until the inmate's claim has been filed at all levels and has been denied at all levels." *Wood v. Carr*, No.4:20-cv-1365-P, 2021 WL 2207202, at *3 (N.D. Tex. June 1, 2021).

Here, a review of the administrative-remedy records maintained by the BOP in the ordinary course of business shows that Norman did not timely exhaust administrative remedies with regard to the remaining claims made the basis of this lawsuit.

6

1. **Norman Exhausted Administrative Remedies Regarding Post-COVID-19 Medical Care, But She Did Not Raise the Issue in the Amended Complaint.**

As noted, Defendants provided an appendix to their summary judgment motion that included the February 17, 2022 Declaration of FMC-Carswell Executive Assistant Churee Costly with copies of the SENTRY Administrative Remedy Retrieval records unique to inmate Norman, as well as copies of several grievances and responses. App., 1–46, ECF No. 27-1. As set forth in the Costly Declaration, Norman exhausted one claim regarding post-COVID-19 medical care after testing positive for COVID-19 on July 28, 2020. *See generally* App. (Costly Declaration at 5); Records at 35–45, ECF No. 27-1. Specifically, Norman submitted Remedy ID 1048200 on September 21, 2020 to FMC Carswell, stating she was "still experiencing ongoing complications and/or symptoms" since testing positive for COVID-19. App. 45, ECF No. 27-1. Norman requested a post-COVID-19 plan to address her complaints of chest pain, shortness of breath, and coughing. *Id.* She further requested that she be provided "monitoring, medication, examination, rehabilitation, and care (routine)." *Id.* Warden Carr responded on October 5, 2020, informing Norman that the BOP adheres to CDC guidance regarding management of COVID-19, including aftercare for COVID-19 exposure and infection. *Id.* at 44. She was encouraged to report to sick call with health concerns. *Id.* The request was then closed. *Id.*

Norman appealed Warden Carr's response to the Regional Director on October 26, 2020, raising the same demand, namely, a "plan" from the BOP as to how it would manage and treat inmates such as herself who had contracted COVID and were still experiencing symptoms. App. 43. The Regional Director responded on December 21, 2020, stating the BOP monitors COVID-19 using numerous directives and guidance from multiple agencies and organizations, including the CDC, WHO, and DOJ. *Id.* at 41. That response also noted that Norman received evaluation and treatment for COVID-19 and informed Norman that Health Services would continue to monitor her condition and that she could submit a sick call request if her condition worsened or if she wanted to discuss her current care plan in detail before her next scheduled appointment. *Id.* On January 26, 2021, Norman appealed the Regional Director's response to the General Counsel. *Id.* at 40. The General Counsel's office reviewed Norman's administrative request documents and medical records. *Id.* at 35. In the

7

response, the National Inmate Appeals Administrator reported that Norman is evaluated by her health care team when she requests it and during routine follow-up and Chronic Care Clinic appointments. *Id.* That response also noted that Norman received medical care and treatment in accordance with the community standard of care. *Id.* The appeal was closed on March 3, 2021. *Id.*

The records provided by the Defendants thus show that Norman did complete all of the requisite exhaustion steps with regard to her claim that she should have been provided a post COVID-19 action plan. A review of the amended complaint, however, shows that Norman did not then raise this as a ground for relief in her amended complaint. Am. Compl. 6-32, ECF No. 12. Thus, her exhaustion of this issue not made part of the suit does not satisfy the requirement that she exhaust administrative remedies with regard to the claims she later sought to pursue in this lawsuit.

### 2. Norman Failed to Exhaust Administrative Remedies Concerning COVID-19 Conditions of Confinement.

Norman submitted several administrative remedy requests concerning such issues as COVID-19 isolation, meals, and mitigation measures, but she did not fully exhaust her remedies on any of these other requests. *See* App. 2–4, 5–8, ECF No. 27-1. For example, on January 8, 2021, Norman submitted Remedy ID 1064507 to FMC Carswell, requesting to pick up her meals and eat them on her unit. *Id.* at 5–6. The request was rejected because it raised claims that had previously been addressed, but Norman appealed the rejection to the Regional Director. *Id.* at 6. The appeal was rejected, and she was instructed to resubmit her BP-9 at the institutional level before appealing. *Id.* Instead of resubmitting, she appealed to the General Counsel. *Id.* The General Counsel rejected the appeal, and she was instructed to resubmit the BP-9 at the institution. *Id.*

On March 10, 2021, Norman submitted Remedy ID 1072220 to FMC Carswell, requesting to be housed in a single-occupancy cell. App. 6, ECF No. 27-1. Warden Carr denied that request and it was closed. *Id.* Norman appealed the Warden's response to the Regional Director, who also denied and closed it. *Id.* She did not appeal to the General Counsel.

Norman also submitted Remedy ID 1072260 on March 10, 2021 to FMC Carswell, requesting that social distancing be enforced. *Id.* That administrative grievance was rejected because it lacked specific information to be considered. *Id.*

8

Norman did not appeal or resubmit her request regarding a failure to social distance. *Id.*

On March 11, 2021, Norman submitted another administrative grievance to FMC-Carswell, assigned Remedy ID No. 1072510, in which she requested a COVID-19 testing plan for inmates. App. at 7, ECF No. 27-1. Warden Carr responded and the request was closed. *Id.* Norman appealed to the Regional Director, who responded and closed that appeal. *Id.* Norman did not appeal to the General Counsel. *Id.*

Norman also submitted to FMC-Carswell grievances enumerated as Remedy ID No. 1084773 and Remedy ID No. 1095694, concerning indoor food service tables and seeking information on COVID-19, respectively. *Id.* at 7. Warden Carr responded to both of these requests, but Norman did not appeal to the regional office. *Id*. The extensive records of Norman's grievance history show that she did not avail herself of the administrative remedy process for any pleaded allegations arising from her placement in isolation after testing positive for COVID-19 on July 28, 2020.

An inmate need not exhaust unavailable administrative remedies. *Ross*, 136 U.S. at 642. There are three circumstances in which administrative remedies are unavailable: when an administrative procedure operates as a dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates; when an administrative scheme is so opaque that it becomes incapable of use (no ordinary prisoner can discern or navigate it); and when prison administrators thwart inmates from using the grievance process through machination, misrepresentation, or intimidation. *Id.* at 643–44. The record reflects that the remedy process was available to Norman during the relevant time period, and as set forth above, she filed numerous remedy requests regarding her incarceration. As established, she did fully exhaust a claim for a formalized "plan" for post COVID-19 treatment. Norman did not, however, choose to file an administrative grievance and/or fully exhaust any of her conditions of confinement claims against Warden Carr and Medical Director Langham before filing this lawsuit.

As noted, Norman has not responded to the summary judgment motion. She sought an extension of time to respond to the motion, and the Court expressly provided her an extension of 45 days to file such a response. ECF Nos. 29 and 30. The Court observes that within her motion for an extension of time, Norman argues facts

related to her preparation and submission of a informal resolution request and request for administrative remedy related to a lack of access to hot water to wash her clothes. Mot for Extension 6–9, ECF No. 29. Norman acknowledges she withdrew that administrative remedy request. *Id.* at 10. Thus, even if the Court considers the information included by Norman in her motion for an extension as responsive to the summary judgment motion, the matters included do not refute that Defendants have established that she did not complete the exhaustion of administrative remedies regarding her remaining claims.

Even if Norman could somehow argue that she should be excused from the exhaustion requirement or that administrative remedies were somehow unavailable to her, such arguments must fail. The Fifth Circuit has held that exceptions to the exhaustion requirement apply only in "extraordinary circumstances," and the prisoner bears the burden of demonstrating the futility or unavailability of administrative review. *Schipke v. Van Buren*, 239 F. App'x 85, 86 (5th Cir. 2007) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). As noted above, "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion. Time and again, [the Supreme] Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements." *Ross*, 578 U.S. at 639 (citations omitted). "And there is no COVID exception to the PLRA's exhaustion requirement." *Valentine v. Collier*, 993 F.3d 270, 294 (5th Cir. 2021) (Oldham, J., concurring). Here, the record shows that Norman did not exhaust her administrative remedies as to the claims remaining before this Court, and thus, her remaining claims are barred from review.

As noted above, because the deadlines for completing exhaustion of administrative remedies has long ago passed, the Court may dismiss Norman's claims with prejudice. *See McCoy v. Zook*, No. 3:20-cv-1051-B-BT, 2021 WL 811854, at *6 (N.D. Tex. Feb. 11, 2021), *rep. and rec. adopted*, 2021 WL 807249, at *1 (N.D. Tex. Mar. 3, 2021) ("[W]hen a prisoner can no longer comply with the exhaustion requirement, because the deadline for completing the administrative remedy has passed, the court may dismiss the suit with prejudice.") (citing *Johnson v. La. Dep't of Pub. Safety & Corr.*, 468 F.3d 278, 280–81 (5th Cir. 2006) (per curiam); *see also Howard v. Gensil*, Civ. No. H-13-0105, 2013 WL 6440952, at *2 (S.D. Tex. Dec. 9, 2013) (stating where exhaustion is precluded because administrative deadlines have

passed, "the action is properly dismissed with prejudice").

## CONCLUSION

For the reasons stated, plaintiff Norman fails to identify any genuine issue of material fact concerning the availability of the administrative remedies or explanation for her failure to exhaust administrative remedies as to her remaining claims. Norman could have exhausted administrative remedies prior to filing suit but did not. Therefore, summary judgment in favor of Defendants is warranted.

## ORDER

It is therefore **ORDERED** that the motion for summary judgment of Defendants Warden Michael Carr and former Medical Director Dr. Langham[3] on the basis of exhaustion of administrative remedies (ECF No. 31) is **GRANTED,** such that all plaintiff Alexis C. Norman's remaining claims are **DISMISSED WITH PREJUDICE.**

**SO ORDERED** on this **26th day** of **July, 2022**.

_Mark T. Pittman_
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[3] The motion for summary judgment incorrectly moves on behalf of Dr. Langham and a "Dr. Jowdy" without reference to defendant Carr. Mot. Summ. J., ECF No. 31. As Carr and Langham are the only remaining defendants, and as the brief in support expressly seeks summary judgment on behalf of Carr and Langham (ECF No. 32), the Court has considered the motion for summary judgment as seeking relief from Warden Carr and Dr. Langham.